UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JALAK JOBANPUTRA,

*Plaintiff,*

-v-

YOON KIM, an individual, and MOCHI CAPITAL, LLC, a limited liability company,

*Defendants.*

Civil Action No. 1:21-cv-7071

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

BEYS LISTON & MOBARGHA LLP
Joshua D. Liston
Jennifer A. Lippman
641 Lexington Ave., 14th Floor
New York, New York 10022
Tel: (646) 755-3601

*Attorneys for Defendants*
*Yoon Kim and Mochi Capital, LLC*

Dated: New York, New York
December 3, 2021

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES .... ii

PRELIMINARY STATEMENT .... 1

STATEMENT OF FACTS .... 2

ARGUMENT .... 5

I. Legal Standard .... 5

II. Plaintiff's Claims for Breach of Joint Venture and Breach of Fiduciary Duty Should Be Dismissed Because Plaintiff Has Failed to Allege Facts to Support Either of These Types of Relationships .... 6

A. Plaintiff's Claim for Breach of Joint Venture Fails as a Matter of Law .... 6

B. Plaintiff's Claim for Breach of Fiduciary Duty Fails As She Has Not Pled A Joint Venture or Any Other Special Relationship That Creates A Fiduciary Duty .... 11

III. Plaintiff's Claim for Breach of Contract Must Be Dismissed Because the Complaint Pleads an Unenforceable Contract .... 12

IV. Plaintiff's Equitable Claims Must Be Dismissed .... 14

CONCLUSION .... 15

## TABLE OF AUTHORITIES

PAGE

CASES

*Andrews v. Cerberus Partners*, 271 A.D.2d 348 (1st Dep't 2000) ....................................... 9

*Ardis Health, LLC v. Nankivell*, No. 11-cv-5013 (NRB), 2012 WL 5290326 (S.D.N.Y. Oct. 23, 2012) ....................................... 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................... 5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................... 5

*Bronx Legal Services v. Legal Services for New York City*, No. 02 Civ. 6199, 2003 WL 145558 (S.D.N.Y. Jan. 17, 2003) ....................................... 11

*Calvin Klein Trademark Trust v. Wachner*, 123 F. Supp. 2d 731 (S.D.N.Y. 2000) ....................................... 11

*Cary Oil Co. v. MG Refining & Mktg., Inc.*, 230 F. Supp. 2d 439 (S.D.N.Y. 2002) ....................................... 14

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ....................................... 6

*Chanler v. Roberts,* 606 N.Y.S.2d 649 (1st Dep't 1994) ....................................... 10

*Conwill v. Arthur Andersen LLP*, No. 602023/05, 2006 WL 1703621 (Sup. Ct. N.Y. Cty. June 21, 2006) ....................................... 11

*ESI, Inc. v. Coastal Power Prod. Co.*, 995 F. Supp. 419 (S.D.N.Y. 1998) ....................................... 12

*Estate of Albin v. Mertz, LLC*, No. 05 Civ. 3440 (KMW) (KNF), 2006 WL 8461442 (S.D.N.Y. Mar. 15, 2006) ....................................... 9

*Foundation Ventures, LLC v. F2G, Ltd.*, 2010 WL 3187294 (S.D.N.Y. Aug. 11, 2010) ....................................... 13

*Global Network Commc'ns, Inc. v. N.Y.C.*, 458 F.3d 150 (2d Cir. 2006) ....................................... 5

*Gramercy Equities v. Dumont*, 72 N.Y.2d 560 (1988) ....................................... 8

*Greenberg v. Chrust*, 198 F. Supp. 2d 578 (S.D.N.Y. 2002) ....................................... 12

*Halebian v. Berv*, 644 F.3d 122 (2d Cir. 2011) ....................................... 5

*Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423 (S.D.N.Y. 2006) ....................................... 12

*In re Cohen*, 422 B.R. 350 (E.D.N.Y. 2010) .......... 10

*In re Elevator Antitrust Litig.*, 502 F.3d 47 (2d Cir. 2007) .......... 5

*J&L Am. Enterprises, LTD., v. DSA Direct*, LLC, No. 401937/05, 2006 WL 216680 (Sup. Ct. N.Y. Cty. Jan. 27, 2006) .......... 11

*Jones v. Whelan*, No. 99 Civ. 11743, 2002 WL 485729 (S.D.N.Y. Mar. 29, 2002) .......... 12

*Kidz Cloz, Inc.*, 320 F. Supp. 2d 164 (S.D.N.Y. 2004) .......... 9

*Itel Containers v. Atlanttrafik Exp. Serv . Ltd.,* 909 F.2d 698 (2d Cir. 1990) .......... 6, 8

*Lawrence v. Richman Group of Conn., LLC*, 407 F. Supp. 2d 385 (D. Conn. 2005) .......... 14

*Mandelblatt v. Devon Stores, Inc.*, 521 N.Y.S.2d 672 (1st Dep't 1987) .......... 11

*Mills v. Elec. Auto–Lite Co.*, 396 U.S. 375 (1970) .......... 14

*Mitsubishi Elec. Corp. v. Westcode, Inc.*, No. 315CV505MADDEP, 2016 WL 3855180 (N.D.N.Y. July 12, 2016) .......... 8

*N. Am. Knitting Mills, Inc.*, 2000 WL 1290608 (S.D.N.Y. Sept.11, 2000) .......... 8

*Ne. Gen. Corp. v. Wellington Adver., Inc.*, 82 N.Y.2d 158 (1993) .......... 13

*Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*, 2004 WL 112948 (S.D.N.Y. Jan. 22, 2004) .......... 9

*Nynex Corp. v. Shared Resources Exchange, Inc.*, No. 14577/89, 1990 WL 605347 (Sup. Ct. Westchester Cty. Sept. 10, 1990) .......... 8

*RKB Enterprises, Inc. v. Ernst & Young*, 582 N.Y.S.2d 814 (3d Dep't 1992) .......... 12

*Scholastic, Inc. v. Harris*, 259 F.3d 73 (2d Cir. 2001) .......... 8

*SEC v. Kik Interactive Inc*., 492 F. Supp. 3d 169 (2020) .......... 13

*SEC v. Martino*, 255 F. Supp. 2d 268 (S.D.N.Y. 2003) .......... 13

*Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598 (S.D.N.Y. 2012) .......... 5

*Slabakis v. Schik*, 164 A.D.3d 454 (1st Dep't 2018) .......... 10

*Steinbeck v. Gerosa*, 4 N.Y.2d 302 (1958) .......... 9

*Train v. Ardshiel Assocs., Inc.*, 635 F. Supp. 274 (S.D.N.Y.1986), *aff'd*, 805 F.2d 391 (2d Cir.1986) ........ 12-13

*USAirways Grp., Inc. v. Brit. Airways PLC*, 989 F. Supp. 482 (S.D.N.Y. 1997) ........ 7, 8

*Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375 (2d Cir. 1995) ........ 5

*Warshay v. Guinness PLC*, 750 F. Supp. 628 (S.D.N.Y. 1990), *aff'd*, 935 F.2d 1278 (2d Cir. 1991) ........ 13

*Zeising v. Kelly,* 152 F. Supp. 2d 335 (S.D.N.Y. 2001) ........ 6, 7, 8

STATUTES, RULES & OTHER AUTHORITIES

15 U.S.C. § 78c(a)(4)(A) ........ 12

15 U.S.C. § 78cc(b) ........ 14

Black's Law Dictionary (6th ed.) ........ 9

FRCP 12(b)(6) ........ 5

SEC No-Action Letter (May 15, 2010) (https://www.sec.gov/divisions/marketreg/mr-noaction/2010/brumbergmackey051710.pdf) ........ 14

SEC Order, *In re Wireline, Inc.*, Admin Pro. No. 3-20206, (https://www.sec.gov/litigation/admin/2021/33-10920.pdf) ........ 13

Defendants Yoon Kim ("Kim") and Mochi Capital, LLC ("Mochi") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint filed by Plaintiff Jalak Jobanputra ("Jalak").

**PRELIMINARY STATEMENT**

This is a case involving cryptocurrencies, but is controlled by familiar legal principles. The Complaint alleges that Jalak and the Defendants entered into a joint venture agreement to invest in two cryptocurrencies (one of which subsequently spawned a third cryptocurrency), with the venture to distribute 20% of the tokens to Jalak and 80% to Kim when the tokens became freely transferrable. The Complaint alleges that Defendants breached this agreement by failing to distribute her tokens, and that Kim breached his fiduciary duty to Jalak for the same reason.

However, even accepting her allegations as true, and giving her the benefit of all reasonable inferences, Jalak fails to allege a joint venture. The Complaint does not allege that Jalak and the Defendants manifested an intent to be associated as joint venturers, nor does it allege that there was a provision in the agreement for the sharing of profits and losses. Both deficiencies are fatal to Count I of the Complaint, to the extent it claims a joint venture existed, and to Count IV in its entirety.

The remaining claims of the Complaint should also be dismissed. In the absence of any plausible joint venture allegations, Count I is a breach of contract claim, but the contract at issue is unenforceable. The Complaint effectively alleges that Jalak should be paid a transaction-based fee for her work in brokering the cryptocurrency transactions, but Jalak is an unregistered broker in violation of Section 15(a) of the Securities Exchange Act of 1934 ("Exchange Act"). Accordingly, the alleged contract is voidable at Defendants' will, and the breach of contract claims should be dismissed. Likewise, the remaining two claims in the Complaint – unjust

enrichment and quantum meruit – must be dismissed because they are an attempt to circumvent an illegal contract.

**STATEMENT OF FACTS**

According to the Complaint, Jalak is a businesswoman who founded the venture capital fund Future/Perfect Ventures ("FPV") in 2014. Compl. ¶ 16. FPV is an early-stage venture capital fund that invests in decentralized technology. *Id.* ¶ 18. Defendant Kim was introduced to Jalak through friends on or about 2005 to 2006, after which point the two maintained a friendship. *Id.* ¶ 3.

On or around August 2017, Jalak and Kim started discussions about potential investments in cryptocurrency. The venture capital funds that were part of FPV were not yet able to invest in cryptocurrency assets. *Id.* ¶ 23. Jalak and Kim had discussions about working together to facilitate such investments, with Jalak identifying viable cryptocurrency investments and Kim providing liquid capital for the investments. Jalak and Kim discussed an arrangement whereby Jalak would receive 20% of the profits of the investments. *Id.* ¶ 24.

Specifically, according to the Complaint, "[p]er the terms of the agreement, Jalak would contribute her experience, credentials, and business network, including her proprietary investment analysis, to identify viable cryptocurrency investments, and Kim would provide liquid capital for the investments, with all profits subject to a 20/80 split, including the profits derived from eventual sale of the cryptocurrencies and any profits realized from use of the cryptocurrency tokens on their respective networks, such as staking rewards." *Id.* ¶ 5.

According to the Complaint, the 20/80 split of "profits" was not really a split of "profits": "Jalakand Kim agreed that the profits, *i.e.*, cryptocurrency/proceeds/value from each joint venture transaction would be distributed once there was liquidity in the relevant cryptocurrency

investment, that is, once the relevant cryptocurrency was transferrable. Once the cryptocurrency was transferrable, both Jalak and Kim could have realized profits either from sale of the cryptocurrency assets or by utilizing those assets on their respective networks, such as by deriving staking rewards." *Id.* ¶ 25.

The first investment that Kim made with advice from Jalak was Token Sale by the Web 3 Foundation ("Web 3") for their Polkadot tokens ("DOTs"). Jalak provided Kim with access to the DOTs Token Sale and communicated with Web 3. *Id.* ¶ 27. Kim made the $150,000 investment through Mochi Capital LLC, a limited liability company owned exclusively by Kim. *Id.* ¶ 28.

On September 29, 2017, Kim completed the Simple Agreement for Tokens ("SAFT") from Web 3 and sent to Web 3 $150,000.00 and a cryptocurrency wallet address controlled by Kim to receive the DOTs. Web 3 countersigned the SAFT on October 11, 2017 and distributed 5,320.101 DOTs to Kim's crypto wallet on October 29, 2017. *Id.* ¶ 29.

The DOTs transferred by Web 3 were not transferable or saleable as of October 29, 2017 and would not be until the Polkadot network on which the DOTs could be used was deployed. *Id.* ¶ 30.

On or about November 2017, Kim invested $25,000 in Blockstack's Token Sale. Kim received 208,333 STX, a non-transferable and non-saleable cryptocurrency to Kim's cryptocurrency wallet. The Stacks Network had not yet been deployed. *Id.* ¶ 31.

Around July of 2019, Web 3 announced that all DOT token holders would be entitled to an equal amount of Kusama tokens ("KSM") for use on Polkadot's network. Kim became entitled to 5,320.101 KSM, which were not initially transferable or saleable. KSMs became fully transferable and saleable in December of 2019. *Id.* at ¶ 33.

In late 2019 and early 2020, Kim and Jalak discussed the idea of starting a cryptocurrency assets venture capital fund, which would be called "FP Capital." In anticipation of soliciting prospective investors, Jalak and Kim prepared an investor presentation in February 2020. *Id.* ¶ 34. Nowhere in this presentation did Kim or Jalak represent that they were joint venturers. *See* Compl., Ex. A. In fact, the presentation makes no reference to Jalak and Kim being past partners or joint venturers in any way. *Id.*

Jalak sent Kim an email on April 12, 2019, referring to "the fact that we did Polka Dot + Blockstack together," *see* Compl., Ex. B, but the email does not indicate that they did so as partners or joint venturers. FP Capital never launched. *Id.* ¶ 36.

On or about August 18, 2020, DOTs became transferable. Around that same time, the Polkadot network changed the denomination of its DOT token such that the original 5,320.101 DOTs issued to Kim's crypto wallet were redenominated to 532,010.10 DOTs as of August 21, 2020. *Id.* ¶ 37. STX became transferable and saleable in the United States on or about January 2021. *Id.* ¶ 39.

Jalak alleges that Defendants' failure to transfer to her 20% of the DOTs, KSMs, and STX when those cryptocurrencies became transferable and saleable constitutes a material breach of the Agreement. *Id.* ¶ 41. According to the Complaint, the USD cash equivalent of Jalak's alleged share of DOTs, KSMs, and STX between the time these cryptocurrencies became saleable and transferable and the date of the Complaint could have been as high as the following:

| | |
|---|---|
| DOTs (106,402.02): | $5,287,116.37 USD (high price of $49.69/DOT) |
| KSMs (1,064): | $663,670.00 USD (high price of $623.75/KSM) |
| STX (41,667): | $117,500.94 USD (high price of $2.82/STX) |

*Id.* ¶ 42.

**ARGUMENT**

## I. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). However, this "flexible 'plausibility standard'" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (internal quotation marks and citations omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question in a Rule 12(b)(6) motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of plaintiffs' claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. N.Y.C.*, 458 F.3d 150, 155 (2d Cir. 2006)). Accordingly, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as

true and draws all reasonable inferences in the plaintiff's favor. "For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated into it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks and citations omitted).

## II. Plaintiff's Claims for Breach of Joint Venture and Breach of Fiduciary Duty Should Be Dismissed Because Plaintiff Has Failed to Allege Facts to Support Either of These Types of Relationships

Count I of the Complaint, brought against both Defendants, is entitled "Breach of Contract/Joint Venture Agreement," and Count IV is a breach of fiduciary duty claim against Kim only. Count I, to the extent it claims a joint venture existed, and Count IV should be dismissed because the Complaint fails to allege a joint venture or a fiduciary duty under New York law.

### A. Plaintiff's Claim for Breach of Joint Venture Fails as a Matter of Law

Jalak's claim for breach of the supposed joint venture/partnership (Count One) fails as a matter of law and should be dismissed. Under New York law, "[i]n order to properly plead a joint venture, a party must plead four essential elements: (1) a specific agreement manifesting the intent of the parties to be associated as joint venturers; (2) a contribution of property, financial resources, effort, skill or knowledge on the part of each party; (3) a provision for the sharing of profits and losses; and (4) some degree of joint control and joint management by the parties over the enterprise." *Zeising v. Kelly,* 152 F. Supp. 2d 335, 347 (S.D.N.Y. 2001) (citing *Itel Containers v. Atlanttrafik Exp. Serv . Ltd.*, 909 F.2d 698, 701 (2d Cir. 1990)) (additional citations omitted). It is well established that "[t]he absence of any one of these elements is fatal to the establishment of a joint venture." *Id.* at 347-48 (citations omitted).

Jalak has failed to plead at least two of the required elements of a joint venture. First, Jalak has failed to allege that the parties intended to become joint venturers. At best, Jalak alleges, in conclusory terms, that "Jalak and Kim entered into a joint business venture" such that Jalak agreed to "contribute her experience, credentials, and business network … to identify viable cryptocurrency investments" and Kim agreed to "provide liquid capital for the investments." (Compl. ¶¶ 4, 5.) These allegations wholly fail to support the conclusion that both parties intended to become joint venturers. *Zeising*, 152 F. Supp. 2d at 347-48. Jalak asserts nothing more than a bare legal conclusion (disguised as a factual allegation) that Kim was a partner with her. *See* Compl. ¶ 49 (referring to the "partnership"). A plaintiff must also allege joint control and management of the business, the contribution by each party, and the intent to form a partnership. *Ardis Health, LLC v. Nankivell*, No. 11-cv-5013 (NRB), 2012 WL 5290326, at *5-6 (S.D.N.Y. Oct. 23, 2012). The mere allegation that the parties entered into a "joint venture," "the purpose of which was to combine resources and efforts to create an effective business plan," is insufficient as a matter of law because "Plaintiff has pled nothing that demonstrates an intent to enter into anything other than a simple contractual relationship." *Zeising*, 152 F. Supp. 2d at 348. A joint venture is not created just because two individuals "decided to work together and form an alliance, because both initially thought it would be a productive one. Many companies seek to cooperate with each other and reach agreements to implement such cooperation. However, most of these agreements do not create joint ventures." *USAirways Grp., Inc. v. Brit. Airways PLC*, 989 F. Supp. 482, 493 (S.D.N.Y. 1997). Even viewing the facts in the light most favorable to Jalak, the alleged agreement described herein does not amount to a joint venture.

Furthermore, contrary to Jalak's assertions in the Complaint, the fact that Kim may have made isolated statements that refer to the investments being made "jointly" does not somehow create a partnership/joint venture if the legal requirements for a partnership were not otherwise met.[1] Even assuming Kim used the words "together" or "jointly" to refer to Jalak's involvement in Kim's investments, as Jalak alleges (*see* Compl. ¶¶ 34-35), it is well settled that "calling an organization a partnership does not make it one." *N. Am. Knitting Mills, Inc.*, 2000 WL 1290608, at *2 (S.D.N.Y. Sept.11, 2000). "The use of the word 'partnership' does not create a partnership unless there is an agreement to share profits and losses." *Nynex Corp. v. Shared Resources Exchange, Inc.*, No. 14577/89, 1990 WL 605347, at *5 (Sup. Ct. Westchester Cty. Sept. 10, 1990); *see also US Airways Group*, 989 F. Supp. at 492-93 (allegations that the parties entered into a series of cooperative agreements and the defendant described the parties' relationship as a "joint venture" and "partnership" were insufficient as a matter of law to allege a joint venture relationship because, *inter alia,* there was no allegation of an "intent to enter a joint venture"); *Mitsubishi Elec. Corp. v. Westcode, Inc.*, No. 315CV505MADDEP, 2016 WL 3855180, at *3 (N.D.N.Y. July 12, 2016) (statements addressing the parties' relationship as a joint venture or a partnership are not dispositive as the mere phrasing of agreements cannot create such a business relationship).

---

[1] The concepts of "partnership" and "joint venture" are closely intertwined. Indeed, under New York law, "the legal consequences of a joint venture are equivalent to those of a partnership." *Itel Containers Int'l Corp. v. Atlanttrafik Express Service*, Ltd., 909 F.2d 698, 701 (2d Cir. 1990) (quoting *Gramercy Equities v. Dumont*, 72 N.Y.2d 560, 565 (1988)); *see also Scholastic, Inc. v. Harris*, 259 F.3d 73, 84 (2d Cir. 2001) ("Under New York law joint ventures are governed by the same legal rules as partnerships because a joint venture is essentially a partnership for a limited purpose." (citations omitted)); *Zeising v. Kelly*, 152 F. Supp. 2d 335, 347 (S.D.N.Y.2001) ("[p]rinciples of partnership law control the analysis of joint venture agreements"). The elements required to prove the existence of each enterprise are also similar.

The second essential element of a joint venture that Jalak has failed to plead – and could not in good faith plead – is the parties' agreement to share profits and losses. In order to plead a joint venture, one must plead a division of profits and losses – an "indispensable" pleading requirement. *See Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*, 2004 WL 112948, at *7 (S.D.N.Y. Jan. 22, 2004) (plaintiffs must plead "sufficient facts in support of each of the required elements of a partnership" (including sharing of profits and losses)); *Andrews v. Cerberus Partners*, 271 A.D.2d 348 (1st Dep't 2000) ("[p]laintiff's attempt to establish an oral agreement to enter into a joint venture must fail because of the absence of any allegation that the parties were to share losses") (citing *Steinbeck v. Gerosa*, 4 N.Y.2d 302, 317 (1958)); *Kidz Cloz, Inc.*, 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004) (element of joint venture is that "there was a provision for the sharing of both losses and profits. The absence of any one element 'is fatal to the establishment of a joint venture.'… The requirement that the parties have agreed to share in the profits and losses is 'an indispensable essential of a contract of partnership or joint venture.'"); *Estate of Albin v. Mertz, LLC*, No. 05 Civ. 3440 (KMW) (KNF), 2006 WL 8461442, at *8 (S.D.N.Y. Mar. 15, 2006) (dismissing on the pleadings where no allegation in the complaint provided that parties were to share in the profits and losses of the alleged partnership).

The Complaint does not plead that Jalak and Defendants agreed to share profits or losses. To be fair, the Complaint states that the parties agreed to have "all profits subject to a 20/80 split," Compl. ¶ 5, but the Complaint then clarifies that the "split" of "profits" the parties allegedly agreed to is simply a *distribution* to Jalak of 20% of the total cryptocurrencies. *Id.* ¶ 25. This is not a sharing of "profits" in any reasonable sense of the word. Black's Law Dictionary (6th ed.) defines "profit," in relevant part, as the "[g]ain realized from business or investment over and above expenditures." *Id.* Here, the Complaint does not allege that any gain

has been "realized" because the cryptocurrencies at issue are not alleged to have been sold; there are merely paper profits. The Complaint suggests that, after the 20/80 distribution of the tokens, each of Jalak and Kim can proceed monetizing (or not) their share of the cryptocurrencies however they want, Compl. ¶ 25, but, even if that were the agreement, it is further evidence that the two had no joint venture agreement because either party could end up with gains or losses that differ from the alleged 20/80 split.

Likewise, nothing in the Complaint provides that the parties were to share in the profits and losses of the alleged partnership. Only one paragraph of Jalak's Complaint even mentions the word "losses," but this does not amount to an agreement to "submit to the burden of making good the losses." *Steinbeck*, 4 N.Y.2d at 317. Jalak allegedly had the "option" of "converting her share of the cryptocurrency into capital contributions to share in potential investment losses (in addition to the losses suffered from her unpaid labor) in exchange for a higher "carry" or share of the total realized profits." Compl. ¶ 26. This alleged option makes clear only that she is *not bound* to share the losses. *See Chanler v. Roberts,* 606 N.Y.S.2d 649, 650 (1st Dep't 1994) ("[A]n undertaking to share in profits without submitting to the burden of making good the losses renders such an agreement a nullity under partnership law."). A mere "option" to share in potential losses means that Jalak "only stands to lose the individual services [she] invested in that business endeavor, [she] is not incurring a shared loss as required by a joint venture agreement." *In re Cohen*, 422 B.R. 350, 377 (E.D.N.Y. 2010). It is "fatal to plaintiff's claim that a joint venture was created" where "plaintiff fails to indicate the losses he would be jointly and severally liable for" or where prospective losses are paid solely from defendant's share of proceeds. *Slabakis v. Schik*, 164 A.D.3d 454, 455 (1st Dep't 2018).

### B. Plaintiff's Claim for Breach of Fiduciary Duty Fails As She Has Not Pled A Joint Venture or Any Other Special Relationship That Creates A Fiduciary Duty

Jalak bases the breach of fiduciary duty claim (Count Four) solely on the existence of a joint venture. *See* Compl. ¶ 63 ("Pursuant to the joint venture partnership entered into by Jalak and Kim as alleged herein, Kim owed fiduciary duties of care, loyalty, and good faith to Jalak."). Because a joint venture is not adequately pled (*see* Section II(a), *supra*), this claim must be dismissed too. *Bronx Legal Services v. Legal Services for New York City*, No. 02 Civ. 6199, 2003 WL 145558, at *8 (S.D.N.Y. Jan. 17, 2003) (dismissing breach of fiduciary duty claim when Complaint failed to allege any facts establishing a joint venture).

Moreover, the claim fails in its own right because Jalak fails to plead that any other special relationship existed under which fiduciary duties would be owed by Kim. It is well-settled under New York law that, "in order to create a fiduciary duty, a special relationship of trust and confidence must exist," and that "a fiduciary relationship exists only where one entity 'is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation.'" *J&L Am. Enterprises, LTD., v. DSA Direct*, LLC, No. 401937/05, 2006 WL 216680, at *6 (Sup. Ct. N.Y. Cty. Jan. 27, 2006) (quoting *Mandelblatt v. Devon Stores, Inc.*, 521 N.Y.S.2d 672 (1st Dep't 1987)). "[T]he mere assertion of a fiduciary duty in the complaint does not create one without a factual basis from which to infer its existence." *Conwill v. Arthur Andersen LLP*, No. 602023/05, 2006 WL 1703621, at *11 (Sup. Ct. N.Y. Cty. June 21, 2006) (citation omitted). Plaintiff bears the burden of alleging extraordinary circumstances that create a fiduciary relationship. *See Calvin Klein Trademark Trust v. Wachner*, 123 F. Supp. 2d 731, 733-34 (S.D.N.Y. 2000). Jalak has not pled any facts from which one could infer any relationship between the parties other than an arms'-length relationship and, thus, Jalak's claim

for breach of fiduciary duty fails as a matter of law. *RKB Enterprises, Inc. v. Ernst & Young*, 582 N.Y.S.2d 814, 816 (3d Dep't 1992) (dismissing an alleged breach of fiduciary duty claim because a "conventional business relationship does not create a fiduciary relationship in the absence of additional factors."); *see also Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 441 (S.D.N.Y. 2006) (dismissing claim for breach of fiduciary duty where there was no allegation of facts to support the inference of a fiduciary duty); *Greenberg v. Chrust*, 198 F. Supp. 2d 578, 583 (S.D.N.Y. 2002) (same); *ESI, Inc. v. Coastal Power Prod. Co.*, 995 F. Supp. 419, 434 (S.D.N.Y. 1998) (same).

## III. Plaintiff's Claim for Breach of Contract Must Be Dismissed Because the Complaint Pleads an Unenforceable Contract

To the extent that Count I is brought as a breach of contract claim, it must be dismissed because the alleged contract is unenforceable. The Complaint alleges that there was a simple contract—payment to Ms. Jobanputra in exchange for her introduction of Defendant Kim to token sellers—this arrangement is illegal and unenforceable.

In general, state and federal securities laws prohibit the payment to non-registered broker-dealers in securities transactions. Section 15(a) of the Securities Exchange Act of 1934 ("Exchange Act") requires persons engaged in broker or dealer activity to register with the SEC pursuant to Section 15(b) of the Exchange Act. The Exchange Act broadly defines "broker" as one who "engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(a)(4)(A).

Brokers are to be distinguished from mere finders. "[A] finder finds potential buyers or sellers, stimulates their interest, and brings parties together, while a broker brings the parties to an agreement on particular terms." *Jones v. Whelan*, No. 99 Civ. 11743, 2002 WL 485729, at *7 (S.D.N.Y. Mar. 29, 2002) (citing *Train v. Ardshiel Assocs., Inc.*, 635 F. Supp. 274, 279

(S.D.N.Y.1986) ("Finders find potential buyers or sellers, stimulate interest and bring parties together. Brokers bring the parties to an agreement on particular terms."), *aff'd*, 805 F.2d 391 (2d Cir. 1986))); *Warshay v. Guinness PLC*, 750 F. Supp. 628, 636 (S.D.N.Y. 1990) ( "[F]inders, unlike brokers, do not play a role in the negotiation, drafting and signing of a purchase agreement and closing documents."), *aff'd*, 935 F.2d 1278 (2d Cir. 1991); *Ne. Gen. Corp. v. Wellington Adver., Inc.*, 82 N.Y.2d 158, 162–63 (1993) ("A finder is not a broker, although they perform some related functions.... The finder is required to introduce and bring the parties together, without any obligation or power to negotiate the transaction, in order to earn the finder's fee. While a broker performs that same introduction task, the broker must ordinarily also bring the parties to an agreement.").

To determine whether a party has acted as a broker, courts consider a number of factors, including whether the purported broker: (1) is an employee of the issuer of the securities; (2) receives transaction-based commission as opposed to a salary; (3) sells, or previously sold, the securities of other issuers; (4) participates in negotiations between the issuer and the investor; (5) makes valuations regarding the merits of the investment or gives advice; and (6) finds investors actively rather than passively. *See Foundation Ventures, LLC v. F2G, Ltd.*, 2010 WL 3187294, at *7 (S.D.N.Y. Aug. 11, 2010) (citing *SEC v. Martino*, 255 F. Supp. 2d 268, 283 (S.D.N.Y. 2003)). Here, the Complaint's allegations demonstrate that Jalak, an investment professional, worked as a broker in this context by: soliciting investors; assisting in structuring securities transactions;[2] provided advice regarding the merits of the investments; helping identify potential investors; and participating in deal negotiations. Compl. ¶¶ 23-29. Moreover, Jalak is claiming

[2] Digital assets offered and sold through "simple agreements for future tokens" ("SAFT"s), with the same characteristics as the assets at issue in this case, are securities. *See* SEC Order, *In re Wireline, Inc.*, Admin Pro. No. 3-20206, at 2 (https://www.sec.gov/litigation/admin/2021/33-10920.pdf). *See generally SEC v. Kik Interactive Inc.*, 492 F. Supp. 3d 169 (2020).

an entitlement to fees based on the size and success of the transaction; payment of either "transaction-based" or "success-based" compensation alone can trigger a violation of Section 15. *See* SEC No-Action Letter (May 15, 2010) (https://www.sec.gov/divisions/marketreg/mr-noaction/2010/brumbergmackey051710.pdf).

As Jalak herself pleads facts showing she is an unregistered broker, Section 29(b) of the Exchange Act provides that her illegal claim to payment from Defendants "is voidable at the option of the innocent party." *See* 15 U.S.C. § 78cc(b); *Mills v. Elec. Auto–Lite Co.*, 396 U.S. 375, 387–88 (1970) (holding that section 29(b) "does not compel the conclusion that the contract is a nullity, creating no enforceable rights" and lower federal courts' interpretation that section 29(b) renders "the contract merely voidable at the option of the innocent party ... is eminently sensible"); *Cary Oil Co. v. MG Refining & Mktg., Inc.*, 230 F. Supp. 2d 439, 452–53 (S.D.N.Y. 2002). Accordingly, Count I should be dismissed.

**IV. Plaintiff's Equitable Claims Must Be Dismissed**

Jalak brings two equitable claims against both defendants: unjust enrichment and quantum meruit. (Compl. ¶¶ 52-61.) They are premised on the exact same facts as her contract/joint venture claims. These claims must be dismissed because they are an attempt to circumvent an illegal contract. *See, e.g.*, *Lawrence v. Richman Group of Conn., LLC*, 407 F. Supp. 2d 385, 393 n.14 (D. Conn. 2005) (when recovery under a contract is barred by the contract's illegality, a plaintiff cannot recover under unjust enrichment or other quasi-contract theories "because otherwise recovery under any such theory would effectively circumvent the prohibition in federal securities laws.").

**CONCLUSION**

For the reasons set forth above, Defendants respectfully requests that the Court dismiss the Complaint.

Dated: New York, New York
December 3, 2021

BEYS LISTON & MOBARGHA LLP

By: */s/ Joshua D. Liston*

Joshua D. Liston
Jennifer A. Lippman
641 Lexington Ave., 14th Floor
New York, New York 10022
Tel: (646) 755-3601
jliston@blmllp.com
jlippman@blmllp.com

*Attorneys for Defendants*
*Yoon Kim and Mochi Capital, LLC*