UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JALAK JOBANPUTRA,

                Plaintiff,

– *against* –

YOON KIM *and* MOCHI CAPITAL, LLC,

                Defendants.

**OPINION & ORDER**

21-cv-7071 (ER)

Ramos, D.J.:

    Jalak Jobanputra brought claims against Yoon Kim and Mochi Capital, LLC for allegedly withholding her share of profit resulting from the parties' cryptocurrency investment venture. Doc. 1. Kim and Mochi answered, and Kim counterclaimed for breach of fiduciary duty, unjust enrichment, and quantum meruit resulting from the subsequent attempt to expand the work of the alleged joint venture by creating a new joint venture, an investment fund that included outside investors. Doc. 32. Soon thereafter, Kim amended his answer and counterclaim. Doc. 37. The Court dismissed the amended counterclaims, Doc. 71, and Kim amended them again, claiming only breach of fiduciary duty related to the subsequent investment fund, Doc. 74.

    Before the Court is Jobanputra's motion to dismiss the Second Amended Counterclaims ("SACC") for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 75. For the reasons set forth below, the motion is GRANTED with prejudice.

## I.   BACKGROUND

### A. Statement of Facts

#### 1. The Parties

Jobanputra is an investment expert in financial technology ("fintech") markets. Doc. 1 (Compl.) ¶ 2. She has over 20 years of experience in venture capital and founded

the venture capital fund Future\Perfect Ventures ("FPV") in 2014, which invests in decentralized fintech that uses cryptocurrencies and blockchain technology. *Id.* ¶¶ 16, 18.

Kim is the head of research at a digital asset fund, *id.* ¶ 21, and has less experience in the fintech market than Jobanputra. *Id.* ¶ 22. Digital asset funds facilitate investments in a wide range of assets such as blockchain technology and cryptocurrencies. Doc. 74 (Second Am. Answer & Countercl.) ¶ 7.[1] Mochi Capital is a limited liability company organized under Delaware law that is completely controlled and operated by Kim. Doc. 1 ¶¶ 10–11.

*2. Initial Business Venture*

Jobanputra and Kim first met through mutual acquaintances in 2005 or 2006 and became friends. *Id.* ¶ 3. Kim later approached her in August 2017 to propose a potential joint business venture, whereby they would pool their respective expertise and resources to make cryptocurrency investments. *Id.* ¶¶ 3–4. Jobanputra considered Kim's offer because her venture capital fund FPV—in which Kim was an investor—was at the time not able to invest in cryptocurrency assets. *Id.* ¶ 23. Ultimately, Jobanputra agreed and the parties orally entered a joint business venture ("the Agreement") that month for Kim to invest on basis of Jobanputra's analysis. *Id.*

According to the terms of the Agreement, Jobanputra would contribute her experience, credentials, business network, and proprietary investment analysis to identify viable cryptocurrency investments while Kim would provide capital to fund the investments. *Id.* ¶ 24. Pursuant to the Agreement, every investment required Jobanputra and Kim's joint approval. *Id.* ¶ 26. Profits were to be split, with Jobanputra receiving 20% and Kim 80% of each investment. *Id.* ¶ 24. Profits would be distributed once the relevant cryptocurrency was transferrable, as some investments were in currencies in the process of development. *Id.* ¶ 25.

---

[1] Unless otherwise noted, citations to paragraphs in Doc. 74 refer to paragraphs in the SACC, rather than in the Answer.

Under this arrangement, the two invested together in various cryptocurrencies over the next two and a half years. *Id.* ¶ 6. However, when the tokens became transferrable and saleable and Jobanputra became entitled to her share of 20% of the cryptocurrencies, Kim did not transfer the share to her. *Id.* ¶¶ 33, 37–39. Jobanputra alleges this failure to transfer is a breach of the Agreement. *Id.* ¶ 41.

3. *Subsequent Business Venture*

After the success of these initial investments, in 2019, Jobanputra and Kim allegedly agreed[2] to expand their venture to outside investors and start a cryptocurrency assets venture fund through a new joint venture, FP Capital. Doc. 1 ¶ 34; Doc. 74 ¶ 8. R According to Kim, the parties "negotiated and knowing and willingly entered into a joint business venture" in which each, as partners, would "contribute experience, credentials, and business networks to identify viable cryptocurrency investments" and "seek outside investors." Doc. 74 ¶ 8.

Pursuant to the alleged agreement, Jobanputra would focus on seeking outside investors while Kim would handle the day-to-day management of the fund. *Id.* ¶ 9. Kim added, however, that decision-making remained a joint responsibility; he alleges that both parties jointly controlled and managed the venture, from making hiring decisions to consulting one another before any investments were made. *Id.* ¶¶ 9–10. Generally, FP Capital sought a total of $25 million in outside investments with a 2% annual fee and 20% carried interest. *Id.* ¶ 15. Based on the fees, Jobanputra and Kim expected to share revenue of $2 million over FP Capital's initial four-year initial term. *Id.*

Jobanputra and Kim worked together to create promotional and administrative materials for the fund, including preparing an investor presentation and a Private

---

[2] Jobanputra disputes that the parties agreed to launch FP Capital, and instead alleges that they merely explored the idea, ultimately never launching it due to the COVID-19 pandemic. Doc. 1 ¶¶ 34–36.

3

Placement Memorandum ("PPM") for third-party investors. *Id.* ¶ 11.[3] The PPM referred to FP Capital as "[t]he Partnership" and outlined Jobanputra and Kim's joint "proprietary investment process." *Id.* In these investment presentations to potential investors, they referred to themselves as joint venturers, referencing their prior joint investments. Doc. 1 ¶ 34.

Kim alleged that he and Jobanputra agreed to equally split profits and losses from FP Capital. Doc. 74 ¶ 12. He claimed this agreement is "consistent with their written agreements governing entities that would perform certain functions for the FP Capital joint venture[,]" *id.*, referencing formation documents governing two independent entities related to the venture: FP Capital GP, LLC ("FP Capital GP"), FP Capital's general partner; and FP Cap Management, LLC ("FP Manager"), FP Capital's investment manager, *id.* ¶¶ 13–14. In each entity, Jobanputra and Kim were its sole members, each with 50% shares in its profits and losses. *Id.*

Kim alleged that he worked with fund counsel, administrators, and auditors; developed the fund investment strategy; and met with potential investors, fulfilling his individual and shared responsibilities to the partnership. *Id.* ¶ 16. Kim alleged that Jobanputra also helped with the fund investment strategy and presentations and prepared fund documents, but failed to obtain investors, and in January 2020 she told Kim she did not have the money to pay her obligations and suggested shutting down FC Capital. *Id.* At this time, Kim paid her portion of the fund expenses. *Id.* Kim proposed alternative arrangements to try to salvage the fund and their profits, but he alleged that Jobanputra rejected these ideas and "effectively abandoned FP Capital at that point." *Id.* ¶ 17.

Kim claimed that simultaneously to the failure of FP Capital, Jobanputra was, unbeknownst to him, raising a third investment fund through FPV to invest in

---

[3] The PPM, which Kim alleges sets forth the elements of the joint venture agreement, Doc. 74 ¶¶ 7, 12, was not attached to the SACC, nor does Kim allege in the SACC any specifics about who drafted or signed it. Doc. 75 at 7–8.

4

cryptocurrencies and initial coin offerings. *Id.* ¶ 18. Kim alleged that Jobanputra abandoned FP Capital in order to pursue other arrangements through her own venture capital fund FPV and cut Kim out of his share of the profits. *Id.* ¶¶ 18–19.

### B. Procedural History

Jobanputra commenced her action against Kim and Mochi on August 20, 2021, asserting claims of breach of contract, unjust enrichment, quantum meruit, and breach of fiduciary duty arising from Kim's alleged failure to transfer Jobanputra's share of the investment proceeds. Doc. 1. Kim and Mochi moved to dismiss all of Jobanputra's claims on December 3, 2021. Doc. 19.

On September 28, 2022, the Court dismissed the fiduciary duty claim, as well as the breach of contract claim to the extent it was based on the breach of a joint venture agreement, but it otherwise denied Defendants' motion. Doc. 29 (Opinion & Order). The Court held that Jobanputra had adequately alleged an enforceable contract, but not a joint venture. *Id.* at 16–18. Although the Court granted Jobanputra's request for leave to amend her complaint, *id.* at 18–19, she did not so amend.

Kim and Mochi answered the complaint on October 28, 2022 and Kim also counterclaimed for breach of fiduciary duty. Doc. 32. He amended the counterclaims on January 26, 2023, adding additional counterclaims for unjust enrichment and quantum meruit. Doc. 37. Jobanputra moved to dismiss the amended counterclaims on March 23, 2023. Doc. 60.

The Court granted Jobanputra's motion to dismiss each of Kim's counterclaims on August 21, 2023. Doc. 71 (Opinion & Order). The Court held that Kim had not sufficiently pleaded the existence of a joint venture, because while the counterclaim established the parties' intent to be joint venturers, Kim failed to allege that each party had joint management control or that they agreed to share losses from FP Capital. *Id.* at 6–12. As to the former, the Court found that the counterclaims did not allege that the parties had to agree before making any investments for FP Capital; in fact, the mismatch

5

between Kim and Jobanputra's roles in and work for the fund described in the pleadings was insufficient to establish joint management control. *Id.* at 11. Kim's allegations also failed to allege that the parties agreed to share losses for the joint venture itself, only alleging shared profits and losses for FP Capital GP and FP Manager as individual entities without further detail as to the roles each would play in FP Capital investments. *Id.* at 12. The Court also dismissed the unjust enrichment and quantum meruit claims, as Kim failed to allege that Jobanputra benefitted from Kim's work on FP Capital. *Id.* at 13–14. The Court granted Kim's request for leave to amend his counterclaims, as it was the Court's first opportunity to highlight the precise defects of Kim's pleading, and it was not yet apparent that another opportunity to amend would be futile. *Id.* at 14–15.

On September 8, 2023, Kim amended his counterclaims a second time, asserting only breach of fiduciary duty. Doc. 74. To address the element of joint management control, he added an allegation that "[the parties] jointly controlled and managed the joint venture[,]" that both "were required to—and did—consult with each other before making important decisions regarding the venture[,]" including hiring management, and that both were "required to agree on any investments actually made by FP Capital. . . . consistent with written representations they both made to potential investors." *Id.* ¶¶ 9–10. He has also now included an allegation that he and Jobanputra agreed to equally share profits and losses from FP Capital:

> Kim and Jobanputra agreed to split profits and losses from FP Capital equally. This agreement is consistent with their written agreements governing entities that would perform certain functions for the FP Capital joint venture. For example, "[t]he General Partner [of FP Capital] is controlled by Yoon Kim and Jalak Jobanputra (the 'Principals')" and that "Yoon Kim and Jalak Jobanputra are also the Principals of [FP Capital's] Investment Manager." . . . [J]ust as they did for FP Capital itself, Kim and Jobanputra agreed to share equally the profits and losses of FC Capital GP.

*Id.* ¶¶ 12–13. Kim further added allegations that the responsibilities he fulfilled with respect to setting up the partnership, including preparing documents and strategy and

6

paying fund expenses, were in fact joint obligations to the venture. *Id.* ¶ 16. In the instant motion, Jobanputra argues that this new addition is not sufficient to cure the aforementioned pleading deficiencies, and that Kim still fails to sufficiently allege breach and damages. Doc. 75.

## II.     LEGAL STANDARD

"The applicable standard for a motion to dismiss a claim pursuant to Rule 12(b)(6) also applies to a motion to dismiss a counterclaim pursuant to Rule 12(b)(6)." *Stardust Monte-Carlo, S.A.R.L. v. Diamond Quasar Jewelry, Inc.*, No. 16 Civ. 9918 (ER), 2018 WL 1027754, at *2 (S.D.N.Y. Feb. 20, 2018) (citing *Revonate Mfg., LLC v. Acer Am. Corp.*, No. 12 Civ. 6017 (KBF), 2013 WL 342922, at *2 (S.D.N.Y. Jan. 18, 2013); *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 531 F. Supp. 2d 620, 622 (S.D.N.Y. 2008)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). However, this "flexible plausibility standard" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (internal quotation marks and citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555. The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). Indeed, "the purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a

streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citation omitted). Thus, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). In considering a Rule 12(b)(6) motion, a district court may also consider "documents attached to the complaint as exhibits[] and documents incorporated by reference in the complaint." *Doe v. N.Y. Univ.*, No. 20 Civ. 1343 (GHW), 2021 WL 1226384, at *10 (S.D.N.Y. Mar. 31, 2021) (quoting *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)).

### III. DISCUSSION

Jobanputra moves to dismiss Kim's single cause of action for breach of fiduciary duty. Doc. 75. She argues that the SACC fails to cure the flaws identified by this Court in its August 21, 2023 Opinion, Doc. 71, regarding the existence of a joint venture. Doc. 75 at 6. Further, Jobanputra argues that Kim cannot allege a knowing and intentional breach of duty or that he suffered any damages because the fund never launched. *Id.* She argues that no leave to amend should be granted as Kim has already amended his counterclaims twice, once with the benefit of the Court's ruling. *Id.* at 7.

Kim argues that he has now sufficiently pleaded the existence of a joint venture through added allegations of joint management control and shared losses between the two parties. Doc. 78 at 2–4. He claims that both parties were required to agree on any investments made, reflecting joint decision-making, and that Jobanputra does not contest this. *Id.* at 3. He also argues that the SACC does now sufficiently allege an agreement to share losses by directly including an allegation that they agreed to share profits and losses. *Id.* at 4. He argues that, even though the Court did not address the question of

8

breach and damages in its prior Opinion, the SACC sufficiently alleges both. *Id.* at 12–15.

### A. The Breach of Fiduciary Duty Claim is Dismissed

To establish a claim for breach of fiduciary duty under New York law, a plaintiff must prove: (1) the existence of a fiduciary duty, (2) a knowing breach of that duty, and (3) damages resulting therefrom. *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011) (citations omitted). Jobanputra argues that Kim has still failed to establish any of the required elements: she argues that Kim fails to cure the deficiencies previously identified as to sharing of losses and thus fails to alleged the existence of a fiduciary duty; she contends that even if the parties entered into a fiduciary relationship, Kim fails to allege that Jobanputra knowingly breached that duty; and lastly, she maintains that Kim has not sufficiently pleaded that he suffered damages that were contemplated by the parties at the time of contracting. Doc. 75 at 12–18.

As to the first element, Kim alleges Jobanputra owed him a fiduciary duty by virtue of the joint venture they entered into to launch FP Capital. Doc. 74 ¶ 21. Jobanputra argues that FP Capital was not an agreement to enter into a joint venture, so "no fiduciary relationship existed," and she disputes that FP Capital was ever launched. Doc. 75 at 6. As this Court outlined in its prior opinion, a fiduciary duty may be found if there is a joint venture, or in other circumstances where there is a relationship of trust or influence. Doc. 71 at 7–8 (citing *Kidz Cloz, Inc. v. Officially For Kids, Inc.*, 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004); *Teachers Ins. & Annuity Assoc. of Am. v. Wometco Ent., Inc.*, 833 F. Supp. 344, 349–50 (S.D.N.Y. 1993)). To establish a joint venture under New York Law, a party must plead the following elements:

> (1) two or more parties entered an agreement to create an enterprise for profit, (2) the agreement evidences the parties' mutual intent to be joint venturers, (3) each party contributed property, financing, skill, knowledge, or effort to the venture, (4) each party had some degree of joint management control over the venture, and (5) there was a provision for the sharing of both losses and profits.

9

*Kidz Cloz, Inc*, 320 F. Supp. 2d at 171 (citing *Itel Containers Int'l Corp. v. Atlanttrafik Exp. Service Ltd.*, 909 F.2d 698, 701 (2d Cir. 1990)). Jobanputra argues that, even after amending his counterclaims, Kim failed to plead the fifth element of a fiduciary duty and thus fails to plead the existence of a joint venture and therefore a fiduciary duty. Doc. 75 at 12–14.

The Court's August 21, 2023 Opinion held that the claim was deficient in part because it failed to allege that the parties would share losses from FP Capital. Doc. 71 at 11–12. Jobanputra argues that Kim's amendments do not cure this, as he adds only what she describes as conclusory allegations relating to the sharing of losses. Doc. 75 at 13. She specifies that aside from the new sentences he added, there is not enough to establish a profit and loss sharing agreement in FP Capital itself. *Id.* at 14. Kim responds that the problem is cured because the SACC now contains a direct allegation about profit and loss sharing from FP Capital. Doc. 78 at 11.

Without an agreement to share losses, no joint venture can exist, even if the parties agreed to share profits. *Turner v. Temptu Inc.*, No. 11 Civ. 4144 (JMF), 2013 WL 4083234, at *6 (S.D.N.Y. Aug. 13, 2013) (citing *Goureau v. Goureau*, No. 12 Civ. 6443 (PAE), 2013 WL 417353, at *5 (S.D.N.Y. Feb. 4, 2013); *Fetter v. Schink*, 902 F. Supp. 2d 399, 404 (S.D.N.Y. 2012)); *see also Artco, Inc. v. Kidde, Inc.*, No. 88 Civ. 5734 (MJL), 1993 WL 962596, at *10 (S.D.N.Y. Dec. 28, 1993) (If "simply expending efforts to set up a venture were sufficient to satisfy the essential element of sharing of losses, the requirement could nearly always be satisfied."). Further, "[i]f there was no agreement as to the *manner* in which the parties were to share in the profits and the losses, the agreement did not create a joint venture." *Zeising v. Kelly*, 152 F. Supp. 2d 335, 348–49 (S.D.N.Y. 2001) (emphasis added). Moreover, the agreement to share losses must be with respect to the joint venture itself, not individual agreements arising therefrom. *See USAirways Grp. v. British Airways Plc*, 989 F. Supp. 482, 493 (S.D.N.Y. 1997).

Here, the SACC generally alleges that the parties had an agreement to share profits and losses as part of the FP Capital joint venture itself, not merely the two aforementioned independent entities. Doc. 74 ¶ 12. However, this additional statement is conclusory and lacks the requisite specificity to satisfy the elements of a joint venture. *See Selective Beauty SAS v. Liz Claiborne, Inc.*, No. 9 Civ. 9764 (RMB) (HBP), 2010 WL 11685041, at *7 (S.D.N.Y. May 27, 2010) (dismissing plaintiff's claim for breach of fiduciary duty as "too conclusory to support a joint venture" where plaintiff merely alleged that "[t]he joint venture contained provisions for sharing profits and losses").

Kim's additional contention that Jobanputra's refusal to pay her share of FP Capital's expenses—an alleged obligation to the joint venture—is evidence of an agreement to share losses, Doc. 78 at 11, does not help. Allegations of sharing expenditures in setting up a venture are not sufficient to satisfy the loss sharing element of a joint venture. *Artco, Inc.*, 1993 WL 962596, at *10–11 (finding that one party's efforts to set up the venture were insufficient to establish loss sharing, especially since there was no written agreement setting out the terms of the joint venture, and no documents showing that efforts to set up the proposed venture were sufficient to establish loss sharing.).

Similarly, the alleged consistency of the agreement to share profits and losses in FP Capital with agreements to share profits and losses in FP Capital GP and FP Manager, merely stating without specificity that those entities perform "certain functions" for the principal joint venture, does not address the need to sufficiently allege the loss sharing element of a joint venture. *See* Doc. 71 at 12 (finding that sharing profits and losses in those independent entities does not support an allegation of shared profits and losses in FP Capital if there are no allegations regarding "what roles FP Capital GP or FP Manager would play in anticipated FP Capital investment opportunities, nor how money would flow and be allocated amongst entities").

11

Due to its lack of any support beyond a conclusory statement, Kim has again failed to establish the elements of a joint venture and the Court need not reach the parties' remaining arguments as to breach and damages.

### B. Leave to Amend is Denied

Jobanputra argues that no leave to amend should be given, as Kim has failed to fix deficiencies even after the benefit of this Court's August 21 Opinion articulating the problems with the claim. Doc. 75 at 18–20. Kim requests a one-week period to re-plead "[i]f the Court dismisses the fiduciary duty claim for any new reason not previously identified in the Order." Doc. 78 at 15 n.2.

Courts are instructed to "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Second Circuit has counseled strongly against the dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims. *Lorely Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190–91 (2d Cir. 2015).

Here, Kim has now had the "the benefit of a ruling" and still failed to cure the deficiencies pointed out by the Court, so the standard is less permissive. *See Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) ("Leave to amend, though liberally granted, may properly be denied for . . . 'repeated failure to cure deficiencies by amendments previously allowed[.]'" (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The SACC still fails to sufficiently allege the existence of a joint venture. Accordingly, the Court will not grant Kim leave to amend his claim.

## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED with prejudice.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 75.

It is SO ORDERED.

Dated:   May 8, 2024
         New York, New York

_____
EDGARDO RAMOS, U.S.D.J.