UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JALAK JOBANPUTRA,

                Plaintiff,

     – *against* –

YOON KIM *and* MOCHI CAPITAL,
LLC,

              Defendants.

**OPINION & ORDER**

21-cv-7071 (ER)

RAMOS, D.J.:

Jalak Jobanputra brought claims against Yoon Kim and Mochi Capital, LLC ("Mochi," and collectively, "Defendants") for allegedly withholding her share of the profits resulting from the parties' 2017 joint cryptocurrency investment venture on August 20, 2021. Doc. 1. Kim counterclaimed for breach of fiduciary duty, unjust enrichment, and quantum meruit resulting from Jobanputra's creation of a new investment fund that included outside investors on October 28, 2022. Doc. 32. The Court ultimately dismissed all of Kim's counterclaims. Docs. 71, 82. On September 18, 2025, the Court granted Jobanputra's motion for summary judgment (the "Order") and directed the Clerk of the Court to enter judgment in favor of Jobanputra, Doc. 107, which the Clerk of the Court promptly did on September 19, 2025.

Before the Court is Jobanputra's motion to correct the Clerk's Judgment, Doc. 108 (the "Judgment") pursuant to Federal Rule of Civil Procedure 60(a), or in the alternative Federal Rule of Civil Procedure 59(e). Doc. 109. Specifically, Jobanputra asks "the Court [to] conform the Judgment to the Order … and include the sum certain to which the Court has ordered [Jobanputra] is entitled:  20% of the cash value of the tokens the parties earned from their cryptocurrency investments as of Defendants' March 5, 2021 breach, or $4,057,449.41." Doc. 110 at 5. She also requests that the Judgment include pre-judgment and post-judgment interest, both of which are mandatory pursuant to

statute, and which Jalak prayed for in her Complaint.  For the reasons set forth below, Jobanputra's motion is GRANTED.

## I.    BACKGROUND

The Court assumes familiarity with the facts and procedural posture of this action, previously set forth in Doc. 29 (Opinion & Order dated September 28, 2022), Doc. 82 (Opinion & Order dated May 8, 2024), and Doc. 108 (the Order).  The relevant procedural history is set forth below.

### A.  Procedural History

Jobanputra commenced this action against Kim and Mochi on August 20, 2021, asserting claims of breach of contract, unjust enrichment, quantum meruit, and breach of fiduciary duty arising from Kim's alleged failure to transfer Jobanputra's share of the investment proceeds.  Doc. 1.  Kim and Mochi moved to dismiss all of Jobanputra's claims on December 3, 2021.  Doc. 19.

On September 28, 2022, the Court dismissed the breach of fiduciary duty claim, as well as the breach of contract claim to the extent it was based on the breach of a joint venture agreement, but it otherwise denied Defendants' motion.  Doc. 29.  Although the Court granted Jobanputra's request for leave to amend her complaint, *id.* at 18–19, she did not so amend.

Kim and Mochi answered the complaint on October 28, 2022, and Kim counterclaimed for breach of fiduciary duty.  Doc. 32.  He amended the counterclaims on January 26, 2023, adding additional counterclaims for unjust enrichment and quantum meruit.  Doc. 37.  Jobanputra moved to dismiss the amended counterclaims on March 23, 2023.  Doc. 60.  The Court granted Jobanputra's motion to dismiss each of Kim's counterclaims on August 21, 2023.  Doc. 71.  The Court held that Kim had not sufficiently pleaded that FP Capital[1] was a joint venture, because while the counterclaim established

---

[1] FP Capital is a cryptocurrency assets venture capital fund created to expand Jobanputra's and Kim's joint business.  Doc. 103 ¶ 37.

the parties' intent to be joint venturers, Kim failed to allege that each party had joint management control or that they agreed to share losses from FP Capital. *Id.* at 6–12.

The Court granted Kim's request for leave to amend his counterclaims. Doc. 71 at 13–14. On September 8, 2023, Kim amended his counterclaims a second time, asserting only breach of fiduciary duty. Doc. 74. To address the element of joint management control, he added an allegation that "[the parties] jointly controlled and managed the joint venture[,]" that both "were required to—and did—consult with each other before making important decisions regarding the venture[,]" including hiring management, and that both were "required to agree on any investments actually made by FP Capital … consistent with written representations they both made to potential investors." *Id.* ¶¶ 9–10. Jobanputra filed a motion to dismiss on September 22, 2023, arguing that the amended counterclaims were not sufficient to cure the prior pleading deficiencies, and that Kim still failed to sufficiently allege breach and damages. Doc. 75. On October 16, 2023, the Court granted the motion to dismiss the breach of fiduciary duty claim with prejudice. Doc. 82.

On November 19, 2024, the parties jointly wrote to the Court seeking a briefing schedule for motions for summary judgment. Doc. 87. On December 19, 2024, Defendants filed their motion, seeking summary judgment on Jobanputra's breach of contract claims as well as her unjust enrichment and quantum meruit claims. Doc. 90. That same day, Jobanputra filed her cross motion, seeking summary judgment on her breach of contract claim against Kim, and, in the alternative, on her quasi-contract claims. Doc. 93.

The Court issued the Order on the motions for summary judgment on September 18, 2025, granting Jobanputra's motion in full and denying Defendants' motion. Doc. 107 at 21. Specifically, the Court held that since Kim had not sold any Polkadot ("DOT") or Kusama ("KSM") tokens, Jobanputra was "entitled to [20% of] the tokens themselves or their cash value." Doc. 107 at 20. As to the third token, Blockstack ("STX"), the

Court held that Jobanputra was entitled to "20 percent of $253,249.595 minus the $25,000 that Kim initially invested in STX." Doc. 107 at 21. The Court directed the Clerk of the Court to enter judgment in favor of Jobanputra. *Id.* The Judgment was silent as to any pre-judgment or post-judgment interest owed to Jobanputra.

Jobanputra filed the instant motion, which is now fully briefed, on September 24, 2025. Doc. 109. Defendants appealed the Court's Order and the Clerk's Judgment on October 17, 2025. Doc. 115. On February 24, 2026, the Second Circuit issued a notice requiring a case status update, stating that "[s]ince at least one motion cited in FRAP 4(a)4 has been filed in the district court[,] this appeal is stayed pending resolution of the motion[]." Doc. 116.

## II.    LEGAL STANDARD

### A.  Rule 60(a)

Rule 60(a) of the Federal Rules of Civil Procedure ("Rule 60(a)") allows a court to clarify a judgment. Under that rule, a court may provide "clarification and explanation, consistent with the intent of the original judgment, even in the absence of ambiguity, if necessary for enforcement[.]" *L.I. Head Start Child Development Services, Inc. v. Economic Opportunity Commission of Nassau County, Inc.*, 956 F. Supp. 2d 402, 410 (E.D.N.Y. 2013) (quoting *Garamendi v. Henin*, 683 F.3d 1069, 1079 (9th Cir. 2012)). Orders that clarify a judgment should "add certainty to an implicated party's efforts to comply with the [original] order" or "provide fair warning as to what future conduct may be found contemptuous." *N.A. Sales Co., Inc. v. Chapman Industries Corp.*, 736 F.2d 854, 858 (2d Cir. 1984). However, Rule 60(a) "does not allow a court to make corrections that, under the guise of mere clarification, reflect a new and subsequent intent because it perceives its original judgment to be incorrect." *Consumer Financial Protection Bureau v. Sprint Corp.*, 320 F.R.D. 358, 363 (S.D.N.Y. 2017) (quoting *L.I. Head Start*, 956 F. Supp. 2d at 410). Therefore, the distinction between an error that may be clarified under Rule 60(a) and one that must be "reconsidered" under Rule 59 and

4

Local Civil Rule 6.3 is that "a correction under Rule 60(a) cannot alter the substantive rights of the parties, but rather may only correct the record to reflect the adjudication that was actually made." *Sprint Corp.*, 320 F.R.D. at 363 (citation omitted).

### B. Rule 59(e)

A motion to alter a judgment under Rule 59(e) "may be granted 'only if the movant satisfies the heavy burden of demonstrating an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Fireman's Fund Ins. Co. v. Great American Insurance Co.*, 10 F. Supp. 3d 460, 475 (S.D.N.Y. 2014) (quoting *Hollander v. Members of the Board of Regents of the University of the State of New York*, 524 F. App'x 727, 729 (2d Cir. 2013)). The Second Circuit has noted that it is "well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks and citation omitted).

Furthermore, whether to grant or deny a motion brought under Rule 59(e) is within "the sound discretion of the district court." *In re Gildan Activewear, Inc. Securities Litigation*, No. 08-cv-5048 (HB), 2009 WL 4544287, at *2 (S.D.N.Y. Dec. 4, 2009); *see also McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983).

## III. DISCUSSION

Jobanputra moves the Court to correct the final judgment to include the sum certain indicated in the Order, which is needed to enforce the Judgment pursuant to 28 U.S.C. § 3202. Doc. 110 at 8–9. Jobanputra adds that the Judgment "was silent on pre-judgment and post-judgment interest." *Id.* at 7. She argues that "[b]ased upon the undisputed evidence in the record on the underlying motions, those amounts are $4,057,449.41 in compensatory damages and $1,658,774.25 in calculated pre-judgment interest through September 19, 2025." *Id.*

### A. Correcting the Judgment

#### 1. *Rule 60(a)*

Rule 60(a) allows a court to correct a mistake arising from oversight or omission in a judgment, order, or other parts of a record. A party may make a motion pursuant to Rule 60(a) in cases where correcting the judgment "merely correct[s] a judicial oversight, namely the district court's failure to include the monetary award in the [o]riginal [j]udgment." *Dudley ex rel. Estate of Patton v. Penn-America Insurance Co.*, 313 F.3d 662, 665 (2d Cir. 2002).

Jobanputra argues that the Order granted "[her] motion for summary judgment in full, finding in her favor on all claims in the Complaint, and stating that she was entitled to the relief that she sought in her motion." Doc. 110 at 8. Accordingly, she claims she is entitled to $4,057,449.41 in compensatory damages for all three cryptocurrency investments. Doc. 110 at 7.

Defendants, on the other hand, argue that Jobanputra is only entitled to the profits from STX, which was the only investment Kim actually sold, and to 20% of the unsold coins themselves. Specifically, Defendants argue that Jobanputra is "entitled to 20% of the DOT tokens (which, based on [Jobanputra's] calculation of 579,519.90 tokens … is 115,903.98 tokens) and 20% of the KSM tokens (which, based on [Jobanputra's] calculation of 6,097.18 tokens … is 1,219.44 tokens)." Doc. 112 at 2 (internal citations omitted).

According to Defendants, "[h]ad [Jobanputra] sought to clarify the Judgment to specify that she is entitled to (a) 115,903.98 DOTs; (b) 6,097.18 KSMs; and (c) $57,062.40 representing the sold STX, [they] would not oppose." Doc. 112 at 2. Instead, Defendants argue that "[b]y seeking only a dollar amount, [Jobanputra] is asking the Court to modify—not clarify—the remedy," which they deem is a "substantive" change. Doc. 112 at 3. Defendants argue that if the Court were to grant Jobanputra's motion, it "would force Defendants to pay a fixed $4 million sum calculated at March 5, 2021

prices … while Defendants would be left without any profits and would still be holding DOTs and KSMs at current values." Doc. 112 at 4.  In short, Defendants conclude that they "may satisfy the judgment by transferring 20% of the relevant DOT and KSM tokens as well as $57,062.40 representing the sold STX."  Doc. 107 at 4.

Here, the Court first granted Jobanputra's motion for summary judgment as to the breach of contract claim in full.  Doc. 107 at 13.  Pursuant to the parties' agreement, "[Jobanputra] and Kim entered into an agreement in which she would identify cryptocurrency investments for which Kim would provide the capital and they would split the profits 20/80, with Kim keeping 80[% of the profits]."  Doc. 107 at 11 (citing Doc. 105 at 6).  The Court highlighted that "the Complaint … explicitly references that Jobanputra is entitled to the cash value of the tokens in lieu of the tokens themselves."[2] Doc. 107 at 15.

In terms of Jobanputra's quasi-contract claim,[3] the Court also found in favor of Jobanputra.  Defendants are right that the Court pointed out that Kim had not sold any Polkadot ("DOT") or Kusama ("KSM") tokens and that Jobanputra was "entitled to [20% of] the tokens themselves or their cash value."  Doc. 107 at 20.  The Court noted that "[i]t is undisputed that Kim has not sold any DOTs or KSMs and therefore cannot distribute any profits."  Doc. 107 at 20.  As to the third token, Blockstack ("STX"), the Court held that Jobanputra was entitled to "20 percent of $253,249.595 minus the $25,000 that Kim initially invested in STX."  *Id.* at 21.

---

[2] *See also* Doc. 1 ¶ 24 ("The profits would be split with Jalak receiving 20% of each investment … Kim was entitled to retain the other 80% of the investment."); Doc. 1 ¶ 25 ("Jalak and Kim agreed that the profits, i.e., cryptocurrency/proceeds/value from each joint venture transaction would be distributed once there was liquidity in the relevant cryptocurrency investment, that is, once the relevant cryptocurrency was transferrable.  Once the cryptocurrency was transferrable, both Jalak and Kim could have realized profits either from sale of the cryptocurrency assets or by utilizing those assets on their respective networks, such as by deriving staking rewards.")

[3] Jobanputra notes that she only sought restitution on her quasi-contract claims in the alternative.  Doc. 113 at 6.  In her motion for summary judgment, Jobanputra stated the following:  "Moreover, *even if* Kim is found not to have breached an express term of the parties' contract, there is no question he has breached the covenant of good faith and fair dealing implied into every contract by refusing to communicate with Jalak about profit allocation and maximization."  Doc. 94 at 20 (emphasis added).

As the Court noted in its Order, Jobanputra argued in her motion for summary judgment that damages should be calculated based on the value of the tokens at the date of breach, March 5, 2021, when she sent Kim the demand letter notifying him that she considered his failure to respond to her a breach of their contract. Doc. 107 at 20–21 (citing Doc. 94 at 22). The Court also previously explained that "[i]t is settled Second Circuit law that in a breach of contract case, damages are calculated at the time of the breach." Doc. 107 at 21 (quoting *Boyce v. Soundview Technology Group, Inc.*, 464 F.3d 376, 384 (2d Cir. 2006)).

In *Boyce*, a case involving stock options, a jury held and the Second Circuit reaffirmed that the plaintiff was entitled to monetary damages calculated at the time of breach, as opposed to stock payment. *Boyce*, 464 F.3d at 384. Other courts have noted that damages in cases involving stock—which the court finds comparable to cases involving cryptocurrency—are "fixed and determined" "at the time and place of breach." *Simon v. Electrospace Corp.*, 28 N.Y.2d 136, 146 (1971) ("If plaintiff were anxious to own the shares rather than obtain their value, he was free to purchase them in the market. [Plaintiff's] cause of action should not and may not be converted into carrying a market 'call' or 'warrant' to acquire the stock on demand if the price rose above its value as reflected in his cause of action."). The same is true if the stock—or cryptocurrency— plummeted below the value at the time of the breach. Accordingly, just as in *Simon*, where the court held that the plaintiff was entitled to the market value of the stock at the time of breach, here, too, Jobanputra is entitled to the value of cryptocurrency investments at the time of breach—that is, on March 5, 2021.

Jobanputra argues that Defendants ignore the Order's grant of her "breach of contract claim and argue relief should be granted in the form of restitution on Plaintiff's quasi-contractual claims, which Plaintiff only sought, and the Order granted, in the alternative." Doc. 113 at 6. She further argues that "Defendants are requesting specific performance on the breach of contract claim." *Id.* Courts have held that, "[i]n general,

specific performance is appropriate when money damages would be inadequate to protect the expectation interest of the injured party and when performance will not impose a disproportionate or inequitable burden on the breaching party." *New York Community Bank v. Estate of Paraskevaides*, No. 18-cv-3987 (PKC), 2019 WL 3024703, at *6 (S.D.N.Y. July 11, 2019).  It follows that "[s]pecific performance is typically granted when a court believes that money damages may be inadequate due to the difficulty of proving damages to a reasonable certainty or the inability of the injured party to procure a suitable substitute performance with a damages award." *Jenkins v. XpresSpa Group, Inc.*, No. 19-cv-1774 (VEC), 2020 WL 7261138, at *11 (S.D.N.Y. Dec. 10, 2020).

Here, Jobanputra has not requested specific performance, and money damages would put her in the position she would have been had the breach not occurred.  Doc. 113 at 6.  As Jobanputra notes in her briefing for summary judgment, she "merely pointed out that Defendants did not transfer the tokens at the time of her written demand on March 5, 2021, thereby precluding her from deciding what to do with them *at that time*."  *Id.* at 6–7 (emphasis in original).  The Court therefore finds that Jobanputra did not request specific performance—nor would specific performance have been an appropriate remedy here. *See Lucente v. International Business Machines Corp.*, 310 F.3d 243, 262 (2d Cir. 2002) (denying specific performance of a contract for the delivery of publicly traded stock because damages would provide an appropriate remedy).

Defendants argue that "[e]ven though [Jobanputra] contracted for 20% of profits, she would obtain millions of dollars while Defendants would be left without any profits and would still be holding DOTs and KSMs at current values."  Doc. 112 at 4.  That the tokens may have depreciated since the breach on March 5, 2021 is immaterial to the Court's decision.  *Simon*, 28 N.Y.2d at 146 (1971) (noting that "plaintiff was protected against a decline in the value of the stock to which he was entitled to receive delivery" at the time of the breach).

9

Accordingly, just like the Court determined in its Order, Jobanputra is entitled to 20% of the value of the STX, DOT, and KSM tokens on March 5, 2021, the time of the breach.  As Jobanputra calculates, her "20% allocation of the DOTs, KSMs and STX the parties earned, based on their March 5, 2021 token value, is \$3,701,972.96. [Jobanputra's] 20% allocation through staking profits, as of March 5, 2021, is \$355,476.45.  Thus, [Jobanputra's] total damages, as stated in her motion [for summary judgment], are \$4,057,449.41."  Doc. 110 at 9 n.2 (internal citations omitted).

2. *Rule 59(e)*

Jobanputra argues that even if the Court determines that relief under Rule 60(a) is improper, relief is nonetheless proper under Rule 59(e), which provides that a motion to "alter or amend the judgment" must be filed no later than 28 days after the entry of the judgment.

A Rule 59(e) motion allows a district court to alter or amend a judgment to "correct a clear error or prevent manifest injustice." *Virgin Atlantic Airways, Ltd. v. National Mediation Board*, 956 F.2d 1245, 1255 (2d Cir. 1992).  Jobanputra argues that the lack of a sum certain in the original Judgment is clear error and needs to be corrected to prevent manifest injustice because without a correction, she will not be able to enforce the Judgment against Defendants.  Doc. 110 at 12.

Defendants argue that Rule 59(e) motions may not be granted "unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  Doc. 112 at 5 (quoting *SS&C Technologies Holdings, Inc. v. Arcesium LLC*, No. 22-cv-02009 (TMR) (OTW), 2025 WL 2411098, at *2 (S.D.N.Y. Aug. 20, 2025) (citations omitted)).

Given that the lack of a sum certain in the Judgment is clear error, even if the Court had found that correcting the Judgment pursuant to Rule 60(a) was impermissible, it would nevertheless find that amending the Judgment pursuant to Rule 59(e) was appropriate relief.

### B.  Pre-Judgment Interest

Jobanputra seeks $1,658,774.25 in pre-judgment interest through September 19, 2025.  Doc. 110 at 7.  She "recognizes the differing views in the Second Circuit as to whether mandatory prejudgment interest sought after judgment (but before a corrected judgment seeking to include a sum certain and where interest was requested in a complaint) should be brought under Rule 59(e) or Rule 60(a) and brings her motion pursuant to both Rules."  Doc. 110 at 13.

Courts have granted pre-judgment interest under Rule 60(a) in cases where a court evinced intent to award such judgment in the initial judgment, *Robert Lewis Rosen Associates Ltd. v. Webb*, 473 F.3d 498, 504–505 (2d Cir. 2007), or under Rule 59(e) if the party requesting the interest timely requested it within 28 days after judgment was entered, *Meisel v. Grunberg*, 2012 WL 592757, at *1 (S.D.N.Y. Feb. 21, 2012).

Pursuant to Rule 60(a), "[t]he amendment may include an award of pre-judgment interest."  *Capital Construction Corp. of New York v. Zaga*, No. 11-cv-8112 (PKC), 2014 WL 2915882, at *1 (S.D.N.Y. June 26, 2014).  Awarding pre-judgment interest pursuant to Rule 60(a) is allowed "where the judgment has failed accurately to reflect the actual decision of the decisionmaker to award such interest."  *In re Frigitemp Corp.*, 781 F.2d 324, 327 (2d Cir.1986).  Under CPLR 5001(a), "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract[.]"

Jobanputra argues that the $1,658,774.25 in pre-judgment interest through September 19, 2025 was calculated "at a rate of nine percent per annum," which is standard "unless otherwise provided by statute."  Doc. 110 at 7–9.

Defendants, on the other hand, argue that "the [Order] never awarded interest, because … it permit[ted] Defendants to transfer 20% of the DOTs and KSMs" as opposed to their value at the time of breach.  Doc. 112 at 4.  They argue that, accordingly, Jobanputra cannot now request pre-judgment interest pursuant to Rule 60(a).  Defendants argue that, "[a]t most," [Jobanputra] could seek such relief under Rule 59(e), but that

11

Rule is narrowly construed.  It is not intended to reargue damages already decided." *Id.* at 5.  They argue that Jobanputra's "attempt to add interest here is an improper expansion of the judgment." *Id.*

However, the Court granted Jobanputra's motion for summary judgment in full, and, in her complaint, she requested interest.  *See* Doc. 1, Prayer ¶¶ 1–2.  Given that the original judgment did not accurately reflect the Court's intent to award pre-judgment interest, correcting it is appropriate under Rule 60(a).  *See Trustees of New York State Nurses Association Pension Plan v. White Oak Global Advisors, LLC*, 102 F.4th 572, 608 n.20 (2d Cir. 2024) ("We have repeatedly concluded that a district court may correct its judgment under Rule 60(a) to account for prejudgment interest and to specify a date of accrual even where the judgment originally did not provide for interest at all, so long as the record is clear that the court intended to award interest at the time of judgment.").

Even if an award of pre-judgment interest was not proper pursuant to Rule 60(a), it would nevertheless be proper pursuant to Rule 59(e) because Jobanputra moved for pre-judgment interest pursuant to Rule 59(e) on September 24, 2025 five days after entry of judgment.  *See* Doc. 109; *see also In re Frigitemp Corp.*, 781 F.2d at 328 (noting that prejudgment interest could be added to a judgment under Rule 59(e) when it could not be added under Rule 60(a)).[4]

Accordingly, the Court concludes that the Judgment should have set forth Jobanputra's entitlement to $1,658,774.25 in calculated pre-judgment interest through September 19, 2025.  The motion to amend the judgment is therefore granted.

### C.  Post-Judgment Interest

Jobanputra also argues that she is entitled to post-judgment interest.  Defendants' opposition is silent as to post-judgment interest.  Jobanputra is correct that this argument

---

[4] The Supreme Court has held that "a postjudgment motion for discretionary prejudgment interest constitutes a motion to alter or amend the judgment under Rule 59(e)." *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989).

is therefore waived. *Neurological Surgery, P.C. v. Travelers Co.*, 243 F. Supp. 3d 318, 329 (E.D.N.Y. 2017) (deeming an argument waived because it was not addressed in a party's opposition brief). Notwithstanding this finding, the Court will address post-judgment interest below.

Pursuant to 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court … Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a) (footnote omitted). "The award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered." *Lewis v. Whelan*, 99 F.3d 542, 545 (2d Cir. 1996) (citing 28 U.S.C. § 1961(a)). "[P]ost-judgment interest commences from the date a judgment is ascertained in a meaningful way" and "supported by the evidence." *Goodrich Corp. v. Town of Middlebury*, 311 F.3d 154, 178 (2d Cir. 2002) (citation omitted).

Here, the Judgment was ascertained in a meaningful way on September 19, 2025. Doc. 108. Accordingly, Jobanputra is entitled to post-judgment interest from that date. *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 103 (2d Cir.2004) (observing that the date a judgment was meaningfully ascertained separates computation of interest in pre-judgment and post-judgment periods).

## IV.    CONCLUSION

Based on the foregoing, Jobanputra's motion to correct the Judgment, whether pursuant to Rule 60(a) or Rule 59(e), is GRANTED. Jobanputra is hereby awarded $4,057,449.41 in compensatory damages and $1,658,774.25 in calculated pre-judgment interest through September 19, 2025, plus post-judgment interest from the date of the Judgment.

The Clerk of the Court is respectfully directed to terminate the motion, Doc. 109.

It is SO ORDERED.

Dated:   April 27, 2026
         New York, New York

_____

EDGARDO RAMOS, U.S.D.J.